O

# United States District Court
# Central District of California

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY COMPANY INC.; DOES 1–10, inclusive,<br><br>Defendants. | Case № 2:14-cv-02565-ODW(MANx)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND [25]** |

## I.  INTRODUCTION

Plaintiff Deckers Outdoor Corporation makes the famous UGG® Bailey Button Boots.  It owns two United States Design Patents, which cover the Bailey Button designs.  After discovering that Defendant J.C. Penney Company Inc. was selling boots with similar designs, Deckers brought this action, alleging trade-dress infringement, false designation of origin, federal unfair competition, patent infringement, and state-law unfair competition.

JC Penney moved to dismiss the First Amended Complaint, arguing that Deckers failed to state a valid claim for relief.  The Court agrees with most of JC Penney's arguments and accordingly **GRANTS IN PART** JC Penney's Motion to Dismiss with **PARTIAL LEAVE TO AMEND**.[1]  (ECF No. 25.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Deckers is a Delaware corporation with its principal place of business in Goleta, California. (FAC ¶ 4.) Deckers produces footwear under the well-known UGG® trademark and other federal trademarks. (*Id.*; ¶ 8.) Deckers distributes its UGG footwear through authorized retailers and online. (*Id.* ¶¶ 8–9.)

In 2009, Deckers introduced one of its most widely recognizable product lines: the "Bailey Button" style of sheepskin boots. (*Id.* ¶¶ 9, 13.) The Bailey Button boots are made of suede and feature overlapping front and rear panels, curved top edges on the overlapping panels, exposed fleece-type lining, and one or more buttons depending on the height of the boot placed on the lateral side of the boot shaft. (*Id.* ¶ 9.)

Deckers owns several United States Design Patents for its Bailey Button boot styles, including Nos. D599,999 for the Bailey Button Single boot and D616,189 for the Bailey Button Triplet boot ("Bailey Button Design Patents"). (*Id.* ¶ 16.)

Deckers alleges that JC Penney has offered for sale "knock-off" UGG boots, which infringe upon the Bailey Button trade dress and design patents. (*Id.* ¶ 19.) Deckers has pointed to at least two boot styles offered by JC Penney called Arizona Carmen Girls Boots and Arizona Crescent Casual Suede Boots. (*Id.* ¶ 19–20; Ex. 2.) Deckers has not licensed or otherwise authorized JC Penney to use the Bailey Button trade dress or design patents. (*Id.* ¶ 22.)

On April 4, 2014, Deckers filed this action against JC Penney. (ECF No. 1.) Deckers later filed a First Amended Complaint, alleging claims for trade-dress infringement, false designations of origin and false descriptions, federal unfair competition, patent infringement, and unfair competition under California law. (ECF No. 18.) On August 6, 2014, JC Penney moved to dismiss Deckers's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Deckers timely opposed. That Motion is now before the Court for decision.

/ / /

## III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.  DISCUSSION

JC Penney moves to dismiss Deckers's claims for false designation of origin, infringement of the '189 Patent, willful infringement, and state-law unfair

competition.² The Court agrees with JC Penney's arguments with respect to Decker's false-designation, willful-infringement, and state unfair-competition claims and thus grants in part its Motion.

**A.     False designations of origin**

The Lanham Act prohibits any person from using any "false designation of origin" in connection with any goods or services in commerce that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).

JC Penney argues that under the United States Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Deckers's false-designation-of-origin claim fails as a matter of law. JC Penney contends that where, as here, a defendant actually produced the goods at issue—even if those goods embody the plaintiff's ideas or concepts—those goods cannot be the subject of a false-designation claim.

But Deckers attempts to distinguish *Dastar*, asserting that unlike the plaintiff in *Dastar*, Deckers is bringing a passing-off claim—not reverse passing off. Deckers argues that JC Penney violated the Lanham Act by using Deckers's Bailey Button trade dress on its own products to falsely represent that they came from Deckers.

In *Dastar*, Fox Film had acquired the rights to General Dwight D. Eisenhower's book *Crusade in Europe*, which detailed the allied campaign in Europe during World War II. 539 U.S. at 25–26. Fox then arranged for Time, Inc. to produce a television series based on the book—*Crusade*. *Id.* at 26.

---

² JC Penney only argues for dismissal of Deckers's false-designation-of-origin, infringement of the '189 Patent, state unfair-competition claims in its Motion. But JC Penney then concludes by requesting that the Court dismiss Deckers's entire First Amended Complaint. Since JC Penney fails to address Deckers's trade-dress infringement or federal unfair-competition claims, the Court expresses no view with respect to them. They accordingly survive this Motion to Dismiss.

Dastar later produced its own video series called *Campaigns*, which borrowed footage extensively from *Crusade*. *Id.* at 26–27. Dastar also edited the film and added new features and packaging. *Id.* Fox then brought a false-designation-of-origin claim against Dastar. The district court found for Fox, and the Court of Appeals affirmed. *Id.* at 27–28.

But the United States Supreme Court reversed. Interpreting the phrase "origin of goods" in the Lanham Act, the Court concluded "that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court reasoned that the Lanham Act was "*not* designed to protect originality or creativity"—unlike patent and copyright law—and therefore could not be used to "create[]a species of perpetual patent and copyright, which Congress may not do." *Id.* Since Dastar was clearly the producer of the *Campaigns* series, it—not Fox—was the "origin" of those goods for Lanham Act purposes. *Id.* at 38.

Deckers's proposed point of distinguishment—i.e., that Dastar involved a reverse passing-off claim whereas Deckers has brought a passing-off claim[3]—does not remove this case from *Dastar*'s grasp. Both claims still involve false designation of origin under the Lanham Act—and therefore both focus on the definition of "origin" of the goods or services. In a reverse passing-off scenario as in *Dastar*, a producer allegedly misrepresents itself as the origin of the goods of services made by someone else. And in a passing-off situation like this case, a person allegedly misrepresents another entity as the origin of goods or services it produces itself. But the operative issue remains the same: the false designation of origin—whatever origin that may be.

While Deckers repeatedly argues that it has brought a passing-off claim against JC Penney, Deckers does not allege that JC Penney has sold Deckers's Bailey Button Boots as JC Penney's own products. Rather, Deckers confusingly contends that JC

---

[3] As the Supreme Court pointed out, passing off involves a producer misrepresenting its goods or services as someone else's, while reverse passing off occurs when the producer sells someone else's goods or services as his own. *Id.* at 27 n.1.

Penney has appropriated Deckers's Bailey Button Boot trade dress on to JC Penney's own boots and then caused consumer confusion as to the origin of JC Penney's boots. Regardless of whether Deckers accurately characterizes this scenario as passing off, it is crucial that the origin of the boots JC Penney has sold is JC Penney—not Deckers.

It is immaterial for the purposes of Deckers's false-designation claim that JC Penney may have misappropriated the Bailey Button Boot trade dress, as the Supreme Court made clear that "the phrase 'origin of goods' is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." 539 U.S. at 32. Unless JC Penney sold Deckers boots as its own—thus changing the "origin" for Lanham Act purposes—the fact remains that JC Penney is the origin of its own goods. Deckers may not use § 1125(a) as "a species of perpetual patent and copyright" to attach Lanham Act liability to what is more properly the province of patent and copyright law. Under *Dastar*, Deckers's false-designation-of-origin claim fails as a matter of law. The Court accordingly **GRANTS** JC Penney's Motion on this ground **WITHOUT LEAVE TO AMEND**.

**B.     Design-patent infringement**

The Federal Circuit has held that "[w]hether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997). The comparison occurs through the eyes of an ordinary observer familiar with the prior-art designs. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). If the "patented design as a whole is substantially similar in appearance to the accused design," then the defendant has infringed the patent. *OddzOn*, 122 F.3d at 1405.

JC Penney contends that Deckers fails to explain how either the Carmen or Crescent Girls Boots plausibly infringes the '189 Patent.[4]  JC Penney faults Deckers

---

[4] JC Penney does not attack Deckers's pleading with respect to the '999 Patent, so that portion of the patent-infringement claim is not subject to the Motion to Dismiss.

1 for lumping the '189 Patent in with its '999 Patent allegations. JC Penney then
2 proceeds to analyze the design differences between the Carmen Girls Boot and the
3 Bailey Button Triplet design embodied in the '189 Patent.

4 In contrast, Deckers argues that it has properly pleaded infringement of the '189
5 Patent, as it has identified the specific Bailey Button Design patents it alleges JC
6 Penney infringed along with design-patent illustrations and photos of the UGG
7 products embodying the design patents.

8 The Court finds that Deckers properly pleaded JC Penney's alleged
9 infringement of the '189 Patent. The Federal Circuit has held that "[i]nfringement of
10 a design patent is a question of fact." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295
11 F.3d 1277, 1287 (Fed. Cir. 2002). It is therefore improper in a situation like this one
12 to contend that a plaintiff has failed to allege design-patent infringement based on a
13 comparison of the subject designs, since the Court must accept all factual allegations
14 as true in deciding a Rule 12(b)(6) motion. Moreover, as depicted in Figure 1, a
15 comparison of the protected designs with the accused products demonstrates a
16 sufficient visual similarity to at least render infringement of the '189 Patent plausible.
17 Deckers had to do no more.
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**Figure 1**

| Deckers's Design Patents | Accused Products |
|---|---|
| D616,189 | Arizona Carmen Girls Boot |
| D599,999 | Arizona Crescent Casual Suede Boot |

### C. Willful patent infringement

To establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). If the plaintiff establishes that risk, it must then show that the objectively defined risk "was either known or so obvious that it should have been known to the accused infringer." *Id.*

/ / /

California federal courts have taken the view that a plaintiff must plead presuit knowledge in order to adequately plead willful infringement. *E.g.*, *MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-CV-03560-ODW, --- F. Supp. 2d ---, 2014 WL 585450, at *5–6 (C.D. Cal. Feb. 14, 2014); *Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1196–97 (S.D. Cal. July 16, 2013); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012).

JC Penney argues that Deckers conclusorily alleges "on information and belief" that JC Penney's alleged patent infringement was "willful" but fails to state any supporting facts or that JC Penney had advance knowledge of Deckers's patents. JC Penney points out that Deckers only alleges widespread popularity and recognition of Deckers's Bailey Button boot style and the patent notice provided on the boots themselves.

But Deckers contends that the Bailey Button Boots' popularity and patent notice on the products themselves suffices to establish presuit knowledge.

The Court disagrees. Deckers has not alleged that JC Penney was actually aware of either of the patents-in-suit prior to producing and selling the accused products. Even if the Bailey Button Boots have garnered widespread popularity and are stamped with patent notice, those allegations, standing alone, do not establish that JC Penney actually knew about the '189 and '999 Patents. Actual knowledge—not constructive knowledge—is the criterion. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) ("Infringement is willful when the infringer was aware of the asserted patent . . . ."); *Seoul Laser Dieboard Sys.*, 957 F. Supp. 2d at 1196–97 (same).

In its Opposition, Deckers states that "[c]ourts have routinely denied motions to dismiss where the patentee has made similar allegations of willful infringement," and then lists several case citations. (Opp'n 10.) Yet, all but one of these cases actually establish the opposite of what Deckers asserts. In those cases, the plaintiff alleged that

the defendant had actual knowledge of the patents-in-suit—not some form of bootstrapped constructive knowledge. *See Sony Corp. v. LG Electronics U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) ("Here, plaintiff identifies the specific accused products . . . and alleges that *defendants had actual notice of the patents in suits . . . .*" (emphasis added)); *Oakley, Inc. v. 5.11, Inc.*, No. 11CV2173 WQH CAB, 2012 WL 5363245, at *2 (S.D. Cal. Oct. 29, 2012) ("The second amended complaint identifies the specific products alleged to infringe and alleges that the Defendants' [*sic*] had *written notice of the issued patents before the action was filed.*" (emphasis added)); *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, No. 09-C-948, 2011 WL 665439, at *5 (E.D. Wis. Feb. 14, 2011) ("[T]he plaintiffs allege that '[the defendants were] aware of [the plaintiffs' patents] prior to filing [the] Amended Complaint' and yet continued to infringe the patents.").[5] And Deckers's citation to the Federal Circuit's opinion in *Sentry Protection Products, Inc. v. Eagle Manufacturing Co.*, 400 F.3d 910 (Fed. Cir. 2005), is completely inapposite, as that case dealt with the pleading standard for general patent infringement—not enhanced damages for willful infringement. *See id.* at 918 (citing 35 U.S.C. § 287(a)).

Since Deckers has not alleged that JC Penney had actual knowledge of either the '189 or '999 Patents, Deckers's willfulness allegation fails. The Court consequently **GRANTS** JC Penney's Motion on this ground **WITH LEAVE TO AMEND**.

D.  **California's Unfair Competition Law**

Lastly, JC Penney argues that federal law preempts Deckers's California Unfair Competition Law ("UCL") claim. To determine whether federal law preempts a state

---

[5] Deckers cites to one case in which the district court held that actual or constructive knowledge satisfied the willful-infringement pleading standard. *Jardin v. Datallegro, Inc.*, No. 08CV1462-IEG-RBB, 2009 WL 186194, at *7 (S.D. Cal. Jan. 20, 2009). But interestingly, Deckers included a quotation that allegedly came from the case stating that the plaintiff had alleged the defendants' actual knowledge of the patents-in-suit. (Opp'n 10.) Not only does this quotation not support Deckers's position, but that quotation does not appear in *Jardin*. Rather, it comes from a citation to *Jardin* in *Oakley* where the court apparently misquoted *Jardin*. *See* 2012 WL 5363245, at *2.

claim, the Ninth Circuit has held that one must determine "whether the state law claim contains an element not shared by the federal law; an element which changes the nature of the action so that it is *qualitatively* different from a [federal] infringement claim." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–40 (9th Cir. 1993) (internal quotation marks omitted). JC Penney contends that there is no "extra element" that distinguishes Deckers's UCL claim from its federal ones. JC Penney points out that Deckers simply incorporates its previous allegations into its UCL claim.

But Deckers argues that it has alleged JC Penney's bad-faith conduct and that courts have held that alleging bad faith may avoid preemption. Deckers also contends that unfair-competition claims based on California law provide additional remedies such as punitive damages that are not available under the Lanham or Patent Acts.

Deckers confuses the analysis in its opposing arguments. The Ninth Circuit has not held that simply alleging more elements or factual information than necessary saves a claim from federal preemption; rather, the court emphasized that the state claim must require "an element not shared by the federal law." *Id.* Just because Deckers decided to plead bad faith does not mean that this allegation is even an element of a UCL claim. The UCL does not necessarily require bad-faith conduct to establish a violation. For example, under the "unlawful" prong, conduct that violates another law—such as a law not involving any sort of bad faith—could serve as a predicate for UCL liability. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1360–61 (Ct. App. 2010). Since not every law requires bad-faith conduct, it follows that not every UCL claim mandates it either.

Neither does the fact that the UCL authorizes additional remedies save the claim from federal preemption. The Ninth Circuit requires that the state-law claim have an element not shared by federal law; the remedies provided are irrelevant. *See Summit*, 7 F.3d at 1439–40.

Since Deckers has failed to point out any element of its UCL claim not shared by its federal ones, federal law preempts it. The Court thus **GRANTS** JC Penney's Motion on this ground **WITHOUT LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** JC Penney's Motion to Dismiss with respect to Deckers's claims for false designation of origin, willful patent infringement, and the UCL. (ECF No. 25.) The Court **DENIES** the Motion on all other grounds. If Deckers may do so consistent with Rule 11, it may amend its Complaint with respect to presuit knowledge, if any, within 14 days. If Deckers does not amend within that timeframe, JC Penney shall file its answer to the remainder of Deckers's First Amended Complaint within 35 days from the date of this Order.

**IT IS SO ORDERED.**

September 8, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**